IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

Jerry L. Kemp, as Trustee of the JERRY L. KEMP
FAMILY TRUST (the successor in interest to any real property
Owned by R.L. Kemp, Jr.); Carol Lynn Kemp Simpson, as
Trustee of the KAILEY LAUREN KEMP TRUST,
CHELSEA EMERALD KEMP TRUST, ROBERT
LOGAN KEMP TRUST, and KEVIN LEE KEMP, JR. TRUST; and
The Trustees of the KEMP TRUST,
being a Trust created U/A dated January 15, 1990       PLAINTIFFS

V.                          CIVIL ACTION NO. 2:11-cv-10-DCB-JMR

THE LAMAR COMPANY, LLC;
TLC PROPERTIES, INC;
& JOHN DOES 1, 2 and 3                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Defendants' Motion for Summary Judgment [**docket entry no. 11**] and Defendants' Motion to Strike portions of the Affidavits of Andrew Foxworth and Kevin Kemp [**docket entry no. 21**]. Having carefully considered said Motions, the Plaintiffs' opposition thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

**Facts and Procedural History**

The present controversy arises out of six contracts executed by the Parties regarding options to repurchase outdoor advertising signs. On July 24, 2000, the Parties entered into agreements whereby the Plaintiffs sold six outdoor signs and accompanying

easements to the Defendants.[1] Agreement to Repurchase, docket entry no. 8-1 at 5-11, 16-21, 27-37, 42-47. Further, at that time, the Parties executed six option contracts granting the Plaintiffs the exclusive right to repurchase said signs and easements. Id. at 1-2, 12-13, 22-24, 38-40, 48-50, and 52-54. The option contracts provide: "For a period of ten years from and after the dates hereof, Grantor, its successor and assigns, shall have the exclusive right and option to purchase the Easement and the Billboard, and all rights, privileges, and appurtenances related to any of the same." Id. at 1, 12, 23, 38, 49, 52. The price for exercising each option is 72 times the current monthly revenue being produced by the billboard plus a grantee purchase price. Id. The grantee purchase price for each sign is $18,315.00, $13,051.50, $13,777.50, $14,272.50, $12,870.00, and $18,975.00, respectively. Id. at 1, 12, 23, 38, 49, 52.

On February 23, 2010, Andrew Foxworth, the Kemp's attorney, wrote a letter to Lamar expressing an interest in exercising the options and requested that Kemp provide the monthly revenue associated with each billboard. February 23, 2010, Letter, docket entry no. 8-2. Accordingly, the Parties engaged in a series of communications regarding the monthly revenues for each site but

---

[1] The Plaintiffs' Amended Complaint explains that TLC Properties, Inc., is the grantee, and that The Lamar Company is the successor in interest to Kemp-York Outdoor, Inc. ("KYO"), the company with which the Plaintiffs executed their original agreement.

2

ultimately the Plaintiffs were never satisfied that they received accurate information from Lamar. See Mar. 8, 2010, Letter, docket entry no. 8-3; April 1, 2010, Letter, docket entry no. 8-4; April 12, 2010, Letter, docket entry no. 8-5; April 30, 2010, Letter, docket entry no. 8-6; May 12, 2010, Letter, docket entry no. 8-7; July 23, 2010, E-mail, 8-8. Shortly before the time-period for exercising the option had elapsed, Kevin Kemp, on behalf of the Kemps, faxed the following notice to Lamar:

> I write to advise that the Kemp trusts are electing to exercise the option to repurchase certain of the billboards and easements as further identified herein. However, as the current monthly income related to each site cannot be determined or verified with certainty by the Kemp Trusts until current account information is submitted to them as required by the Agreements, the Kemp trusts reserve the right to elect not to repurchase all or any of the sites if the monthly revenue from a site or sites is not what they currently believe it to be. At such time as that information is determined and verified by the parties the exact purchase price will then be known. Assuming the purchase price for each site is within the range of what the Kemp Trusts believe it to be then the Kemp Trusts will repurchase. If, however, the purchase price is not within that range then the Kemp Trusts may elect not to repurchase.

July 23, 2010, e-mail, docket entry no. 8-8.[2] Receiving no response to this notice, Foxworth followed up with Lamar on September 18, 2010, stating his belief that the Plaintiffs had exercised their option to repurchase and providing Lamar with what the Plaintiffs

---

[2] For the record, Kemp faxed a copy of an e-mail to Conner B. Eglin of the Lamar Company. Id.

3

believed the monthly rental incomes to be.[3] See Letter, docket entry no. 8-9; see also Sept. 17, 2010, Letter, docket entry no. 8-10; Sept. 23, 2010, Letter, docket entry no. 8-11. On September 24, 2010, counsel for the Defendants responded to Foxworth stating the Defendants' position that the July 23, 2010, notice did not unequivocally communicate that the Plaintiffs were exercising their right to repurchase and that the deadline for doing so, July 24, 2010, had expired. See Letter, docket entry no. 8-12; see also, Sept. 27, 2010, Letter, docket entry no. 8-14. Accordingly, the Defendants informed the Plaintiffs that they could no longer repurchase the billboards and attendant easements.

Plaintiffs filed suit in the Chancery Court of Forrest County, Mississippi on December 10, 2010, seeking specific performance of the option contracts (Count I) and alleging breach of contract (Count II), breach of duty of good faith and fair dealing (Count III), and tortious breach of contract (Count IV). See Am. Compl., docket entry no. 8. The Defendants removed the case to this Court and not long thereafter moved for summary judgment. Additionally, following the Plaintiffs' response to the instant Motion, the Defendants asked the Court to strike portions of two affidavits submitted by the Plaintiffs.

---

[3] It was in this letter that the Plaintiffs first clearly communicated to Lamar their allegations that the monthly rental amounts were based on double-billing and other questionable billing practices designed to inflate the repurchase prices. See id.

**Summary Judgment Standard**

Summary judgment is apposite "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." <u>Ginsberg 1985 Real Estate P'ship v. Cadle Co.</u>, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## Analysis

In their motion for summary judgment, the Defendants suggest that the Court's analysis should turn on a simple legal question: "Did the Plaintiffs validly exercise their options to repurchase six signs and attendant easements before the options expired." Defs.' Mot. for Summ. J. at 1, docket entry no. 12. Under this analysis, the Defendants argue that the Plaintiffs' notice exercising but reserving the right not to repurchase does not constitute unequivocal acceptance. In response, Plaintiffs dispute this legal conclusion. Relatedly, the Plaintiffs contend that they were not required to accept until the Defendants provided them the information needed to renew. Finally, the Plaintiffs argue that the present suit entails more than the issue of whether or not they exercised their right to repurchase; instead, they argue that the Defendants' failure to provide accurate information (1) was

calculated to cause delay in their exercising their option and (2) breached the implied covenant of good faith and fair dealing.

> I.   *Whether the Plaintiffs exercised their options to repurchase*

As an initial matter, the Court agrees with the Defendants that under Mississippi contract law, the Plaintiffs' faxed e-mail did not unequivocally provide notice that they were exercising their option to repurchase the billboards, and therefore the Plaintiffs did not exercise, and have not exercised, the right to repurchase. See, e.g., Richmond v. EBI, Inc., 53 So. 3d 859, 864 (Miss. App. 2011). In an analogous situation, the Mississippi Court of Appeals recently examined whether a plaintiff clearly communicated his intention to exercise his right of first refusal to buy a certain piece of property before the deadline for doing so expired. The court stated that "[a]cceptance of an option to buy real property must be absolute and unconditional without modifying the initial terms or imposing new terms." Id. at 854 (citing Am. Jur. 2d, Vendor and Purchaser § 43 (2007)). Further, the Court adopted the view:

> If the optionee attaches conditions to his . . . acceptance or notice of his . . . election to buy which are not warranted by the terms of the option, such a response amounts to a rejection of the option unless the acceptance is in the first instance unconditional, and the additional term is a mere request for a departure from the terms of the option as to the time and place of completing the transaction. . . .

Id. (quoting Am. Jur. 2d, Vendor and Purchaser § 43 (2007)).

Accordingly, the Court reads <u>Richmond</u> to establish the rule that an optionee's *conditional* notice of his or her election to exercise an option to repurchase is tantamount to a rejection.

The first option contract between the Parties, which is identical in language to all the option contracts,[4] states that the repurchase price for each billboard is "(i) 72 times the then current monthly revenue being produced by the Billboard (the 'KYO Purchase Price'), plus (ii) 18,315.00 (the 'Grantee Purchase Price') (collectively the 'Purchase Price')." Repurchase Agreements at 1, docket entry no. 8-1. Further, the contract specifies that "Grantor may exercise this right by written notice to Grantee and KYO of its election to do so. Within ten (10) days of Grantee's receipt of such notice, Grantee or KYO shall furnish written documentation of the then current monthly revenue being produced by the advertising structure." Under the contract, the Plaintiffs' written notice to the Defendants is a condition precedent to triggering the Defendants' duty to provide information.

After examining the record, and in particular the communications between the Parties, the Court finds no evidence before it to suggest that the Plaintiffs have ever unequivocally elected to repurchase the billboards. The Court understands the Plaintiffs' position to be that they *are unwilling to agree to*

---

[4] In other words, the "grantee purchase price" differs for each individual billboard, but in all other respects the contracts are identical.

*repurchase until they are satisfied* that the purchase prices provided by Lamar are accurate. Despite the Plaintiffs' contentions to the contrary, Kemp's notice did not bind the Plaintiffs to the repurchase agreement because it gave them an easy out should they be dissatisfied with the purchase price. In other words, if the Plaintiffs later discover that the purchase price for each site "is not what they believe it to be," then, per the plain language of the e-mail, they are not bound to repurchase the property.[5] July 23, 2010, E-mail, docket entry no. 8-2.

*II. Whether the Plaintiffs have any remedy at law*

The Court, however, finds that the Defendants' attempt to characterize the dispositive issue in the present case as a simple question of acceptance overlooks the Plaintiffs' fundamental argument. The Court finds that the essential question in this case is not whether the Plaintiffs failed to accept within the time provided by the contract but, as the Plaintiffs allege in the Amended Complaint, see Am. Compl. ¶ 20, 30, 31, whether the monthly rental amounts provided by Lamar caused the Plaintiffs to condition their acceptance thereby (1) excusing their failure to exercise the

---

[5] The Court's analysis might be different had Kemp stated that the Plaintiffs agreed to repurchase the billboards at the *correct price*, which was essentially what the agreements provided. But not only did Kemp condition the Plaintiffs' acceptance upon their subjective belief regarding each billboard's price, he also failed to give any indication to the Defendants as to what that price was. The Court rejects the Plaintiffs' contention that Kemp communicated a "determination to accept." See Pls.' Resp. Memo. at 4, docket entry no. 17.

9

option to repurchase within the required time or (2) giving rise to damages for their ultimate failure to consummate the contract.

There is authority in both in Mississippi and in other jurisdictions to support the Plaintiffs' position that, under certain limited circumstances, the optionor's delay in exercising the option under the contract, if induced by the optionee, is excusable. The Mississippi Supreme Court has stated:

> If one party to a contract prevents another party from carrying out his part of the agreement, he becomes liable in damages for the breach of the contract. The foregoing rule has been expressed as to options in the following language: "It is a general rule that an optionor who has given the right to purchase property within a specified time may not do any act or omit to perform any duty calculated to cause the optionee to delay in exercising the right."

Callicott v. Gresham, 161 So. 2d 183, 186 (Miss. 1964)(quoting 55 Am. Jur., Vendor and Purchaser, § 40 at p. 510). Similarly, in Steele v. Northup, the Iowa Supreme Court, also relying on legal encyclopedias, stated:

> if the optionee is prevented from performing by obstructive and delaying tactics on the part of the optionor, or if the act to be performed or the price to be paid is determinable only by the optionor and not made known to the optionee so as to permit timely performance, payment or tender, then the delay is excused . . . .

143 N.W.2d 302, 305 (citing both C.J.S. and Am. Jur.).[6] Finally,

---

[6] The Steele Court goes on to note that where payment is required, notice of the intention to make said payment extends the deadline to exercise the option. Id. The Court notes that the present case is distinguishable from Steele in that notice, not payment, is required to exercise the option.

the California Supreme Court similarly excused the optionee's delay in exercising his option after finding that the optionor sought to gain an unconscionable advantage over the optionee with fraudulent representations. Citron v. Franklin, 142 P.2d 16, 22 (1943).

Moreover, aside from the issue of acceptance, as the Plaintiffs point out in their response to the Defendants' Motion, the present case also involves a claim for breach of the implied covenant of good faith and fair dealing. Mississippi has long recognized that "[a]ll contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." Cenac v. Murry, 609 So. 2d 1257, 1272 (Miss. 1992) (citations omitted). In Cenac, the Mississippi Supreme Court indicated that misrepresenting material facts would violate the implied covenant of good faith and fair dealing. Id. Morever, in certain situations, a party may have an affirmative duty to cooperate with the other party in achieving the goals of the contract.[7] Id.

---

[7] In other words, the implied covenant of good faith and fair dealing can sometimes impose on the contracting parties duties which are not explicit in the contract. The Plaintiffs' argument in response to the Defendants' Motion can easily be read to state that the Defendants had an implied duty to provide them with accurate monthly rental information *prior to* the expiration of the deadline. As stated above, this duty is not explicitly established in the contract, and the Court need not address whether the Defendants had such a duty because, under the present facts, such a finding would not alter the Plaintiffs' remedies. For instance, if the fact-finder concludes that the Defendants did provide the Plaintiffs with accurate information, then the Defendants fulfilled their duty and the Plaintiffs would not be excused from failing to exercise their option. If the fact-finder concludes that the information is inaccurate, the Plaintiffs will have a remedy under the contract,

The facts as stated in the Amended Complaint still give rise to a claim for damages under the Plaintiffs' breach of the implied covenant of good faith and fair dealing claim. Assuming, <u>arguendo</u>, the Plaintiffs' claims are true, it would be unreasonable to allow Lamar to either negligently or intentionally provide inaccurate repurchase prices, thereby causing the Plaintiffs not to exercise the options, and then to offer no recourse under the contract after the Plaintiffs discover the amounts were indeed inaccurate. <u>See Restatement (Second) of Contracts</u> § 205 (Comment d).

Accordingly, even though the Plaintiffs have not exercised the option to repurchase, the Court finds that their failure to do so does not automatically entitle the Defendants to summary judgment as a matter of law. First, under <u>Gresham</u> and the other aforementioned authority, if there is evidence to show that Lamar "prevent[ed] the [Plaintiffs] from carrying out his part of the agreement" then Lamar will be liable for breach of contract. <u>Gresham</u>, 161 So. 2d at 186. Secondly, the issue of whether the Defendants breached their duty of good faith and fair dealing is a separate and distinct from the issue of acceptance. Thus, absent evidence showing there is no genuine dispute as to a material fact regarding either of these claims, the Plaintiffs may proceed to trial.

---

regardless of whether or not the Defendants had an implied duty to provide them with information before the deadline had expired.

> *III. Whether the Defendants have met their burden of showing that there is no genuine dispute as to any material fact*

In their rebuttal brief, the Defendants address some of the Plaintiffs' above contentions with the argument that the Plaintiffs have produced no admissible evidence to suggest that the information Lamar provided was inaccurate. See Defs.' Rebuttal Memo. at 5, docket entry no. 20. Related to this contention, the Defendants moved to strike portions of the affidavits of Andrew Foxworth and Kevin Kemp that were attached to the Plaintiffs' response to the present Motion. In their motion to strike, the Defendants argue that Federal Rules of Evidence 8019(c) and 802 preclude the Affiants' averments that John Buys, a representative of the Kemp trust, spoke with vendors who confirmed their suspicions that Lamar was double-billing and provided inflated monthly rental amounts. The Plaintiffs respond that the affidavits contain evidence of their state of mind during the time they were negotiating with the Defendants.

As an initial matter, the Court agrees with the Plaintiffs. The portions of Andrew Foxworth's and Kevin Kemp's affidavits regarding the information provided by John Buys pertain to their state of mind, i.e., they questioned the validity of the monthly rental amounts, and are not offered to prove the truth of the matter asserted, i.e., that the Defendants produced inaccurate

information. See Fed. R. Evid. 801.⁸ Therefore, the Court will not strike these portions of their affidavits. Allowing these statements to stand in the record, however, does not aid the Plaintiffs' central contention that Lamar provided inflated prices, because, by their own admission, such statements are only evidence of their state of mind and are not evidence that the Defendants provided inaccurate information. Moreover, Andrew Foxworth's and Kevin Kemp's subjective belief that they were provided inaccurate billing information does not constitute evidence. Morris, 144 F.3d at 380.

Conversely, however, the sole basis for the Defendants' Motion for Summary Judgment is that the Plaintiffs failed to unequivocally communicate their intention to repurchase the billboards before the deadline expired. See Defs.' Mot. for Sum. J., docket entry no. 11 (attaching Kemp's email as their only exhibit). The Defendants chose not to address the Plaintiffs' basic contention that Lamar did not provide accurate information regarding the monthly rental income for each billboard. The record indicates that Lamar did indeed provide the Kemps with the monthly rental amounts, but it does not indicate whether the amounts were accurate, which–despite

---

⁸ The Plaintiffs cite Federal Rule of Evidence 803(3) in support of their argument, but this rule is inapplicable because it pertains to the declarant's state of mind. To be clear, the Court does not consider as evidence the substance of what the Affiants said John Buys said. There is no merit to an argument that the statements made by John Buys pertain to *his* then-existing state of mind.

the Defendants' attempts to avoid this dispute–is at issue in the case.

Based on the record before the Court, there is testimony and circumstantial evidence to suggest that the Plaintiffs intended to exercise their option to repurchase, and their hesitancy to repurchase was predicated on their belief that Lamar had provided inflated monthly rental amounts associated with each billboard.[9] Kemp's equivocation in his July 23 correspondence, although not explicitly stated therein, can be read to question whether Lamar had provided the proper pricing. On September 16, 2010, believing the Kemps to have validly exercised their option, Foxworth explained with some specificity the reasons the Kemps believed the monthly rental amounts provided by Lamar were inaccurate.[10] Sep. 16, 2010 Letter, docket entry no. 8-9. Rather than responding directly to the Plaintiffs' allegations, the Defendants, through the their attorney, communicated to the Plaintiffs that they had not validly

---

[9] The Court recognizes that the Plaintiffs' self-serving affidavits are typically afforded little credence under Fifth Circuit law. See, e.g., Sanchez v. Dallas/Fort Worth Intern. Airport Bd., 438 Fed. Appx. 343, 346-47 (5th Cir. 2011) (unpublished). Given, however, the absence of testimony or other evidence to contradict the Affiants' claims, whatever weight the Court affords the testimony therein will outweigh the evidence produced by the Defendants.

[10] The record indicates that the Plaintiffs, based on their belief that the pricing information was inaccurate, began to contact the advertisers themselves to inquire how much they were paying per month for each of the requisite billboards. See id.; Sept. 17, 2010, Letter, docket entry no. 8-10; Sep. 24, 2010, Letter at 3, docket entry no. 8-12.

exercised their option. To date, the Defendants have not affirmed or denied the accuracy of the monthly rental information provided to the Plaintiffs before the expiration of the option deadline.

Had the Defendants included testimony or other evidence showing that there could be no genuine dispute as to the accuracy of the monthly rental prices provided to the Plaintiffs before the deadline for exercising their option to repurchase had passed, this evidence would have established a material fact that the Plaintiffs would then have been required to dispute. Demonstrating the absence of the Plaintiffs' evidence showing the inaccuracy of the rental amounts does not absolve the Defendants of their initial duty to produce evidence to the contrary. Celotex Corp., 477 U.S. at 323. In short, at present, the Defendants, as the movants, have not carried their initial burden of showing that there is no genuine dispute and thus are not entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a).

Accordingly,

**IT IS, THEREFORE, HEREBY ORDERED** that the Defendants' Summary Judgment Motion [**docket entry no. 11**] is **DENIED.**

**IT IS FURTHER ORDERED** that the Defendants' Motion to Strike [**docket entry no. 21**] is **DENIED.**

**SO ORDERED** this the 15th day of March 2012.

                                            /s/ David Bramlette
                                  **UNITED STATES DISTRICT JUDGE**